Estate of Emma Mirabelli, Christine Froise and Olga Mirabelli, Co-Administrators v. Commissioner. Estate of Michael A. Mirabelli, Christine Froise and Gloria Mirabelli, Co-Administrators v. Commissioner.
Estate of Mirabelli v. Commissioner
Docket Nos. 36916, 36917.
United States Tax Court
T.C. Memo 1954-26; 1954 Tax Ct. Memo LEXIS 227; 13 T.C.M. (CCH) 424; T.C.M. (RIA) 54132; April 30, 1954, Filed *227 In 1944 and 1945, a partnership, in which decedent, Michael A. Mirabelli, held a 50 per cent interest, received additional income by making unreported sales through fictitious persons, and overstating its cost of goods sold by showing purchases from one such person. Decedent, Emma Mirabelli, reported a one-sixth share of income of the same partnership on her returns for 1944 and 1945 and paid taxs thereon. She was not a member of the partnership. 1. Held, decedent, Michael A. Mirabelli, received additional partnership income in 1944 and 1945 which he failed to report on his returns for those years. 2. Held, further, his failure to report such additional income was due to fraud with intent to evade tax. 3. Held, further, decedent, Emma Mirabelli, overpaid her income tax in 1944 and 1945. Martin M. Lore, Esq., for the petitioners. John J. Hopkins, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve the following income tax deficiencies and penalties: Docket
No.
Year
Tax
50% Penalty
36916
1944
$ 18,522.12
$ 9,261.06
1945
44,973.18
22,486.59
36917
1944
108,913.38
60,652.83 **
1945
131,145.70
80,475.80 **
*228 By amended answer, respondent has asserted an additional deficiency and penalty in Docket No. 36917 as follows: Year
Tax
50% Penalty
1944
$10,993.07
$ 5,496.54
The deficiencies and penalties in Docket No. 36916 are based solely on the respondent's determination that decedent, Emma Mirabelli, was a one-sixth partner in Mario G. Mirabelli & Co. The parties have now stipulated that she was not a partner; hence, there are no deficiencies or penalties with respect to that docket. In Docket No. 36917, the issues to be determined are: (1) did decedent, Michael A. Mirabelli, receive additional partnership income in 1944 and 1945 which he failed to report on his returns for those years, and (2) if so, was such failure due to fraud with intent to evade tax. The issue raised in the petition with reference to the statutory limitation on the period within which deficiencies may be assessed has been waived. Other adjustments in the deficiency notice have not been contested, and will be taken into account in a Rule 50 computation. Some of the facts were stipulated. Findings *229 of Fact The stipulated facts are so found and are incorporated herein. Emma Mirabelli, deceased, and Michael A. Mirabelli (hereinafter referred to as the decedent) were husband and wife, and resided together in Elizabeth, New Jersey, during the years in question. Individual Federal income tax returns were filed with the collector of internal revenue for the fifth district of New Jersey. Decedent died on November 13, 1949. Christine Froise and Olga Mirabelli, petitioners herein, are the duly qualified and acting co-administrators of his estate. During 1944 and 1945, decedent and his brother, Mario G. Mirabelli (hereinafter referred to as Mario), each owned a 50 per cent partnership interest in Mario G. Mirabelli & Co. (hereinafter referred to as the partnership). The partnership's principal office was located in Elizabeth, New Jersey. It was engaged in the manufacture and sale of clothing and the sale of textiles. In the operation of the business, decedent was the "inside man," in charge of production; Mario was the "outside man," in charge of financing, buying, and selling. During the years before us, the partnership made a number of sales of its products through the following *230 fictitious individuals: Howard Doren (or Doran), 475 Fifth Avenue, New York City, Martin T. Townsend, 454 Fourth Avenue, New York City - Phone: Longacre 5-6430 Joseph A. Coebris, 42 Worth Street, New York City - Phone: Worth 2-1896 Sales of partnership merchandise made in such names were not recorded on its books, nor was income therefrom reported on its income tax returns. These supposed individuals were not tenants of the buildings located at the addresses at which they purportedly carried on business, nor did they subscribe to telephones with the abovelisted numbers. Actual customers to whom the partnership sold merchandise were told that these were names under which it carried on business, for the purpose of minimizing its income tax liabilities. In 1944 the partnership books show purchases from the fictitious person, Howard Doren, in the amount of $32,692.65. Seven checks totaling $31,563.15 were drawn payable to Doren in 1944 and 1945, and cosigned by decedent and Mario. The partnership's books also show sales by it to Doren in 1944 in the total amount of $21,678. In 1944 the books of the L. S. Trading Company, 1123 Broadway, New York City, show purchases from Howard *231 Doren of $79,846. Such purchases were negotiated for by Louis Somerfield, a partner of L. S. Trading, with Mario; and payments for the merchandise were made in cash to Mario. Cancelled checks of the L. S. Trading Company also show purchases directly from the partnership in 1944 of $45,009.25. Neither these direct sales to L. S. Trading Company nor those made in the name of Howard Doren were shown on the books of the partnership. Merchandise allegedly sold by the partnership to Doren was the same merchandise purchased by the L. S. Trading Company from Doren. Somerfield had known the Mirabelli brothers for many years. While negotiations were most often carried on with Mario, Somerfield sometimes discussed shortages in shipments and other problems with decedent. In 1945 the books of L. S. Trading Company show purchases from the partnership of $25,891. Charles Vitello, an employee of the Mirabellis, was authorized to receive payment for such purchases by the following letter written on partnership letterhead stationery: "September 12, 1945 "L. S. Trading Co., 1123 Broadway, New York, New York "Att'n: Mr. L. S. Somerfield "Dear Sir: "The bearer of this letter, Mr. Charles Vitello, *232 is hereby authorized to transact business for us with you. "Very truly yours, "MARIO G. MIRABELLI & CO., "/s/ Michael A. Mirabelli "MAM:jw" Such purchases were not shown on the books of the partnership. L. S. Trading Company also purchased merchandise from the partnership through the fictitious person, Martin T. Townsend, in the total amount of $17,766. The purchase through Townsend was arranged between Somerfield and Mario, but was not shown on the partnership books. Payment was made by an L. S. Trading Company check drawn to the order of Martin T. Townsend. In 1945 the books of the Spruce Leather Company, 316 Fifth Avenue, New York, New York, show purchases from Martin T. Townsend in the amount of $27,962.79. Such purchases were negotiated for by a partner of the Spruce Leather Company with one Joseph Lupia, a nephew of Mario. The leather company's books also show purchases in 1945 from the fictitious person, Joseph A. Coebris, in the amount of $40,847.25. Such purchases were negotiated for by a partner of the leather company with one Michael LaPalla, whose sole employment during 1944 and 1945 was as plant superintendent of the Mirabelli partnership. Sales to the leather *233 company through Townsend and Coebris were not shown on the partnership books. The books of the Dorchester Woolen Company, 218 West 37th Street, New York City, show purchases from Joseph A. Coebris during 1945 in the total amount of $24,022.28. Such purchases were made by a partner of the woolen company from Charles Vitello and Mario, and payments therefor were made to Vitello. The purchases were not shown as sales on the partnership books. The woolen company knew that Coebris was a fictitious name under which the partnership carried on business. The books of Leeds Ltd. Coats, Inc., 500 Seventh Avenue, New York City, show purchases from Joseph A. Coebris during 1945 in the amount of $20,299.40. Such purchases were made by the president of Leeds from Charles Vitello, and were made with the full knowledge that such purchases were from the Mirabelli partnership. These purchases were not shown as sales on the partnership books. The books of Haber, Levy & Company, 237 West 37th Street, New York City, show purchases during 1945 from Joseph A. Coebris of $20,429.32. Such purchases were made by a vice-president of the company from Vitello and Mario, but did not appear as sales on the *234 partnership books. Payments therefor were made to Vitello. Charles Vitello's sole employment during 1944 and 1945 was with the Mirabelli partnership, in charge of its Cutting Department. All collections, which he made for the partnership from its above-described sales through fictitious persons, were turned over to decedent or Mario. The Mirabelli partnership sold merchandise to the Rice-Stix Dry Goods Company of St. Louis, Missouri, during 1945 in the amount of $45,000. A part of the merchandise in the amount of $13,311.90 was returned. Payment for the net amount of the purchase in the amount of $31,688.10 was made by a Rice-Six Dry Goods Company check payable to Mario G. Mirabelli. No part of the transaction was reported by the partnership on its books. The check was deposited by Mario in a New York City bank and was used in part for partnership expenses. The balance was loaned by Mario to a friend; and, when repaid, was credited to his partnership capital account. During 1944 the partnership made sales of $103,177.25 which were not disclosed on its books. It made fictitious purchases of merchandise which were shown thereon in the amount of $32,692.65. During 1945 it made sales, *235 which were not shown on its books, in the total amount of $208,906.14. The partnership returns for 1944 and 1945 were prepared from the partnership books and signed by Mario. The return for 1944 shows gross receipts of $2,657,614.82 and ordinary net income of $193,006.98, which was divided equally between 6 alleged partners - decedent, Mario, their wives, and a child of each. The partnership return for 1945 shows gross receipts of $3,929,015.75, and ordinary net income of $328,607.94 which was also divided equally between the 6 alleged partners. Decedent prepared his returns for both years and reported a one-sixth share of the partnership income as shown on the partnership returns. Decedent failed to report his 50 per cent share of additional partnership income on his returns for 1944 and 1945 in the respective amounts of $67,934.95 and $104,453.07. His failure to report such amounts was due to fraud with intent to evade tax. On her return for 1944, decedent, Emma Mirabelli, reported as her only income a one-sixth share of partnership profits in the amount of $32,167.83 and indicated payment of tax thereon of $14,526.29. On her return for 1945, income in the total amount *236 of $59,837.69 was reported; $54,767.99 of such amount being partnership income. Payment of tax for that year was indicated in the amount of $34,898.86. Pursuant to the parties' stipulation that she was not a member of the partnership during either year, there has been an overpayment of income taxes for both years. Opinion RICE, Judge: Petitioners concede that decedent, Michael A. Mirabelli, is liable for an additional deficiency for unreported partnership income, arising from the Rice-Stix Dry Goods Company sale, which was not shown on the partnership books. They deny, however, that the failure to report income from this sale was due to fraud. They further deny that decedent had any knowledge of other sales made by the partnership and not reported on its books; and argue that if such sales were made, Mario Mirabelli received all the income therefrom. It is seldom possible to establish fraud by direct proof of intention. In cases such as the one before us, where the taxpayer is dead, we must rely solely on the facts of the record and the conclusions which logically may be inferred therefrom. We do not have the benefit of the taxpayer's testimony to explain various transactions *237 in question nor the opportunity of observing his general demeanor - often factors of deciding importance in determining whether the respondent has met his burden of proving fraudulent intent by clear and convincing evidence. This Court observed in , that "[isolated] instances of discrepancy or occasional lapses from the rigid accountability contemplated by the law might conceivably be overlooked, but where the whole fabric of petitioner's tax accounting is permeated with gross error, where elaborate artifice is employed to accomplish the end sought, * * * the situation goes beyond mere fortuitous coincidence, or unintentional error. It evidences a purpose to evade." The record before us discloses a persistent pattern of partnership sales through fictitious persons, none of which were ever reported on its books. In addition to those sales were others which it made directly in its own name, but which also were not reported on its books. The record further shows that false entries were deliberately made on the partnership books in 1944 to record purchases from the fictitious person, Howard Doren, in the amount of $32,692.65, which *238 resulted in an overstatement of its cost of goods sold in that year. Sales of merchandise under fictitious names do not, in themselves, of course, establish fraudulent intent. When all such sales, as well as others, however, are unreported and are so frequent that they show a purposely conceived fabric for evasion, as they do here, they are compelling evidence that the failure to report income therefrom was due to fraud with intent to evade tax. That conclusion is further strengthened when, as here, the purchasers were told that the use of fictitious names was to "minimize" the partnership's tax liability. The record does not show what exact portion of partnership income in 1944 and 1945 resulted from sales to the United States Government. It does indicate, however, that a major part of its income was from such sales. In 1944 unreported partnership income amounted to approximately 70 per cent of its reported income, and in 1945 to approximately 63 per cent of its reported income. All unreported sales were to civilian purchasers. It is inconceivable that so large a share of income could have been "mistakenly" or "negligently" omitted from the partnership books. We have weighed *239 carefully petitioners' argument that decedent had no knowledge of the unreported sales through fictitious persons and that the proceeds from any such sales, if made, were received and held exclusively by Mario. Fraud, of course, cannot be imputed nor presumed. , on appeal C.A. 9, January 4, 1954. Certainly, the record before us contains abundant evidence of the prominent role which Mario played in negoltiating many of the unreported sales here in question. But the record also shows, however, that the decedent co-signed 7 checks, totaling $31,563.15, in payment of merchandice from the fictitious person, Howard Doren; that he was familiar with Charles Vitello's activities in making sales for the partnership under fictitious names; and that, on occasion, Vitello turned over to him the proceeds which were collected from such sales. We know too that decedent knew Louis Somerfield, of the L. S. Trading Company, and discussed with him problems which arose in connection with that firm's purchases from the partnership. It is not surprising that decedent does not appear more frequently as a more prominent participant in the fictitious sales, *240 since he was the "inside man", responsible for production at the partnership's plant, while Mario was the so-called "outside man", responsible for selling and financing. But it is also impossible for us to believe that being the "inside man", in charge of production, decedent would not have known that so large a volume of merchandise - accounting for $312,083.39 of partnership income in the 2-year period - had been shipped from the plant. It is also to be noted that the petitioners offered no proof that decedent did not share fully with Mario in all unreported partnership income. , affd. (C.A. 2, 1953), certiorari denied . Mario testified, of course, that the partnership returns, as filed, were correct. Protestations of innocence, however, are not proof thereof. , affd. (C.A. 2, 1949), certiorari denied . Certainly, is this true in the face of evidence which compels us to the inescapable conclusion of a fraudulent intent to evade taxes. Respondent has proved by clear *241 and convincing evidence that decedent failed to report his 50 per cent share of additional partnership income in 1944 and 1945, and that such failure was due to fraud with intent to evade tax. Decisions will be entered under Rule 50. Footnotes
**. Penalty computed on net income prior to allowance for net operating loss carry-back.↩